IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| DENISE W.,[1] | Case No. 2:18-cv-01529-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

**BECKERMAN, U.S. Magistrate Judge.**

Denise W. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's decision and remands for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.      PLAINTIFF'S APPLICATION**

Plaintiff was born in June 1971, making her forty-two years old on August 19, 2013, the alleged disability onset date. (Tr. 18, 29, 95, 110.) Plaintiff completed two years of college and has past relevant work experience as a radio dispatcher, cashier II, and office manager. (Tr. 28-

29, 85-86, 216.) In her DIB application, Plaintiff alleges disability due primarily to fibromyalgia, back and cervical spine issues, nerve damage, depression, and diabetes.[2] (Tr. 95, 110.)

The Commissioner denied Plaintiff's DIB application initially and upon reconsideration, and on January 5, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 18.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on December 14, 2016. (Tr. 53-93.) On August 25, 2017, the ALJ issued a written decision denying Plaintiff's DIB application. (Tr. 18-30.) Plaintiff now seeks judicial review of that decision.

## II. THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2)

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status] . . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of December 31, 2018 (*see* Tr. 19) reflects the date on which her insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2018, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15–cv–02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 18-30.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 19, 2013, the alleged disability onset date. (Tr. 20.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[L]umbar and cervical degenerative disc disease, urticaria, diabetes mellitus, and fibromyalgia." (Tr. 21.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 23.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations: (1) Plaintiff needs to be limited to "unskilled, repetitive, routine tasks in two-hour increments," (2) Plaintiff can engage in no more than "occasional stooping, squatting, crouching, crawling,

kneeling, and climbing ramps and stairs," (3) Plaintiff "can never climb ropes, ladders, [or] scaffolds," and (4) Plaintiff is "likely to be absent from work one time every two months and off task at work up to 10% of the time but still meeting the minimum production requirements of the job." (Tr. 23.) At step four, the ALJ concluded that Plaintiff was unable to perform her past relevant work. (Tr. 28.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a semiconductor bonder, "circuit board touch up greeter," and "printed circuit layout taker." (Tr. 30.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide legally sufficient reasons for discounting the opinions of Plaintiff's treating orthopedic surgeon, Janmeet Sahota, M.D. ("Dr. Sahota"), and the non-examining state agency physicians, Neal Berner, M.D. ("Dr. Berner"), and Sharon Meyers, D.O. ("Dr. Meyers"); and (2) failing to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's friend, Christine Wizner ("Wizner").[3] As explained below, the Court finds that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. Accordingly, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

///

---

[3] The Commissioner devotes several pages of his response brief to arguing that the ALJ provided "legally sufficient, unchallenged reasons to discount [Plaintiff's] subjective complaints." (Def.'s Resp. Br. at 4.) Plaintiff, however, concedes that she "did not raise a challenge to the ALJ's credibility determination on appeal." (Pl.'s Reply Br. at 8.) Accordingly, the Court does not address the Commissioner's arguments regarding Plaintiff's symptom testimony. (*See* Pl.'s Reply Br. at 8-9, stating that the Court need not address Plaintiff's symptom testimony).

I.  MEDICAL OPINION EVIDENCE

   A.  Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

   B.  Analysis

Plaintiff argues that the ALJ erred in discounting the opinions of her treating orthopedic surgeon, Dr. Sahota, and the non-examining state agency physicians, Drs. Berner and Meyers. Drs. Sahota, Berner, and Meyers' opinions conflict with the opinion of the examining physician,

Michael Henderson, M.D. ("Dr. Henderson").[4] The ALJ therefore needed to provide specific and legitimate reasons for discounting Drs. Sahota, Berner, and Meyers' opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (explaining that "in the case of a conflict 'the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician'") (citation omitted); *Killian v. Barnhart*, 226 F. App'x 666, 668 (9th Cir. 2007) ("Killian's contention that the ALJ erred when he discounted her treating physician's opinion is flawed because the treating physician's opinion conflicted with that of a nonexamining physician, and the ALJ supported his decision with specific and legitimate reasons.").

1.  **Dr. Sahota**

In October 2013, Dr. Sahota, Plaintiff's treating orthopedic surgeon, filled out a medical source statement. (Tr. 430-34.) In his medical source statement, Dr. Sahota stated that he had examined Plaintiff nine times between July 2012 and August 2013. (Tr. 431.) Additionally, Dr. Sahota stated that (1) Plaintiff suffers from "[h]erniation [at] the L4-L5 with nerve impingement" and "radiculopathy due to [an on-the-job] injury," as well as numbness and foot drop, (2) Plaintiff cannot sit, stand, bend, twist, or walk for a substantial amount of time due to nerve damage, which results in stabbing and burning pain, (3) Plaintiff has not improved despite undergoing two surgeries and physical therapy, (4) Plaintiff's "nerve root was compressed for too long to suggest a full recovery," (5) Plaintiff's "loss of function will be a disability that [she] will have indefinitely," and (6) as a result of her on-the-job injury, Plaintiff is "unable to perform

---

[4] Unlike Drs. Sahota, Berner, and Meyers, Dr. Henderson did not endorse any work-related functional limitations. (*Compare* Tr. 104-06, *and* Tr. 122-23, *and* Tr. 430-34, *with* Tr. 536, 851-61.)

the normal and customary activities of [her prior] occupation or any related or similar occupation." (Tr. 432-34.)

The ALJ assigned "little weight" to Dr. Sahota's opinion. (Tr. 28.) The ALJ found Dr. Sahota's opinion inconsistent with (1) Plaintiff's course of physical treatment, (2) Plaintiff's performance on examinations, and (3) Plaintiff's daily activities. (Tr. 28.) Notably, however, the ALJ intended but failed to provide record citations in support of these findings: "[T]he undersigned gives [Dr. Sahota's] opinion little weight because it is not consistent with the record as a whole, including the claimant's course of physical treatment, her performance at physical examinations (CITE), and her documented daily activities (CITE; hearing testimony)." (Tr. 28.) The ALJ also noted that Plaintiff's "symptoms and functioning improved with treatment" because one of Plaintiff's treating physicians stated that Plaintiff walked better with a brace. (Tr. 28.)

The Court finds that the ALJ committed reversible error in discounting Dr. Sahota's opinion. As an initial matter, the record cite in support of the ALJ's finding that Plaintiff improved with treatment fails to support such a conclusion. As the ALJ noted, on April 20, 2015, Plaintiff's treating physician, Jean You, M.D. ("Dr. You"), observed that Plaintiff was "walking better" with a brace. (Tr. 779.) In the same treatment note, however, Dr. You also observed that Plaintiff's pain control had "WORSENED" and Plaintiff's "daily function . . . ha[d] gotten worse." (Tr. 779.) Additionally, Dr. You stated that Plaintiff suffered from failed back syndrome, lumbosacral radiculopathy, and fibromyalgia, all of which were "[n]ot improving." (Tr. 781.) Given Dr. You's findings, the Court finds that the ALJ erred in discounting Dr. Sahota's opinion based on Dr. You's treatment note because it fails to demonstrate that Plaintiff improved with treatment.

PAGE 8 – OPINION AND ORDER

The ALJ also discounted Dr. Sahota's opinion based on Plaintiff's daily activities. In discounting Dr. Sahota's opinion on this ground, the ALJ intended but failed to cite to specific activities that Plaintiff discussed during the administrative hearing. (*See* Tr. 28, discounting Dr. Sahota's opinion based on Plaintiff's "documented daily activities (CITE; hearing testimony)"). As explained below, the ALJ erred in discounting Dr. Sahota's opinion on this ground.

The Commissioner asserts that the Court can "reasonably infer that the ALJ was referencing an earlier discussion [about Plaintiff's] daily activities," namely, the portion of the ALJ's decision where he discounted Drs. Berner and Meyers' opinions. (Def.'s Resp. Br. at 16.) In that portion of the ALJ's decision, however, the ALJ did not cite Plaintiff's hearing testimony and it is not clear how the evidence the ALJ did cite, or intended to cite, undermines Dr. Sahota's opinion.

Indeed, in discounting Drs. Berner and Meyers' opinions, the ALJ cited: (1) a treatment note that reflected that Plaintiff can dress herself, groom herself, bathe herself, use the toilet, get in and out of bed, and walk in her home, and (2) pages two and three of Plaintiff's adult function report, which reflect that Plaintiff's pain impacts her daily activities and that Plaintiff takes care of a small dog with help from her family, prepares simple meals (i.e., cereal, sandwiches, and microwavable food), and performs minimal housework (i.e., occasional laundry, dishes, and dusting). (Tr. 239-40, 819.) The ALJ also noted that Plaintiff reported to the Social Security Administration that she can feed herself, has difficulty showering and using the toilet due to pain, cannot "bend to tie [her] shoes," can only walk short distances, experiences "extreme pain" when standing, and can only intermittently cook, clean, and shop because of her pain. (Tr. 251.) It is not clear how this evidence undermines Dr. Sahota's opinion. Nor is it clear how Plaintiff's

hearing testimony undermines Dr. Sahota's opinion. (*See* Tr. 57-72, reflecting that Plaintiff testified that she receives help from her sister and daughter, suffers from foot drop due to nerve damage and often trips and falls, has a hard time using the stairs and maintaining her balance, needs to take pain medication on a daily basis, experiences back spasms that impair her ability to walk for days at a time, does not participate in leisure or recreational activities, cannot tie her shoes, does minimal household chores, and has a hard time getting dressed, using the bathroom, and showering).

In sum, because the ALJ failed to explain how Plaintiff's activities undermine Dr. Sahota's opinion and it is not clear how the evidence the ALJ cited undermines Dr. Sahota's opinion, the Court finds that the ALJ erred in discounting Dr. Sahota's opinion based on Plaintiff's activities.

The ALJ also discounted Dr. Sahota's opinion based on Plaintiff's course of physical treatment. This was not a specific and legitimate reason for discounting Dr. Sahota's opinion. As Dr. Sahota explained, Plaintiff has "not improved" even though she participated in physical therapy and underwent two surgeries on her back, including a "spinal fusion and disc replacement" surgery that Dr. Sahota described as "extensive." (Tr. 433.) Dr. Sahota also explained that Plaintiff's L4-L5 nerve root was "compressed for too long to suggest a full recovery," and thus Plaintiff's "loss of function will be a disability that [she] will have indefinitely." (Tr. 433.) Given this evidence and the ALJ's failure to explain how Plaintiff's course of physical treatment undermined Dr. Sahota's opinion, the Court finds that the ALJ erred in discounting Dr. Sahota's opinion based on Plaintiff's course of physical treatment. *See Jacob M. v. Comm'r Soc. Sec. Admin.*, No. 17-2000-MC, 2019 WL 2267303, at *7 (D. Or. May 28, 2019) (rejecting the ALJ's reliance on the plaintiff's course of treatment, noting that the plaintiff

went to physical therapy and underwent an invasive surgical procedure, and stating that it was "unclear what more Plaintiff could have done to treat his symptoms and the ALJ offered no explanation").

Finally, the ALJ discounted Dr. Sahota's opinion based on Plaintiff's performance on physical exams. Relying on Dr. Henderson's consultative exams and the Ninth Circuit's decision in *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), the Commissioner argues "Dr. Henderson's findings and opinion alone is a valid basis to discount Dr. [Sahota's] opinion." (Def.'s Resp. Br. at 3.) The Court disagrees. *Tonapetyan* does not state that a contrary opinion alone can justify the rejection of a treating physician's opinion. *See Amloian v. Colvin*, No. 15-02081, 2016 WL 7223260, at *4 (C.D. Cal. Dec. 13, 2016) ("The Commissioner also asserts, based on *Tonapetyan* . . . that the conclusions of [the] examining physicians . . . 'are substantial evidence supporting the ALJ's decision' [to reject the treating orthopedic surgeon's opinion]. But nothing in that case states that the existence of contrary medical opinions alone can justify the ALJ's rejection of a treating physician's opinion."); *Morton v. Colvin*, No. 14-5468-RSM, 2015 WL 509835, at *3 (W.D. Wash. Feb. 6, 2015) ("While the court in *Tonapetyan* found that contrary opinions served as 'additional specific and legitimate reasons' to reject another medical opinion, it is clear from the court's analysis that this contradiction alone was insufficient to discredit the opinion.").

Further, the ALJ failed to recognize that because Dr. Sahota is a specialist, his opinion is owed greater weight. *See Garrison*, 759 F.3d at 1013 (holding that the ALJ erred by failing to recognize that because one of the claimant's doctors was a specialist, his opinion was owed greater weight); *Byrd v. Colvin*, No. 12-6059, 2014 WL 372899, at *4 (W.D. Wash. Feb. 3,

2014) (noting that the opinions of specialists, such as orthopedic surgeons, are generally entitled to more weight).

For the reasons discussed above, the Court finds that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Sahota's opinion.

### 2. Drs. Berner and Meyers

Plaintiff argues that the ALJ also failed to provide specific and legitimate reasons for discounting Drs. Berner and Meyers' opinion. The Court declines to address this argument because, as explained below, the Court remands this case for further proceedings.[5]

## II. LAY WITNESS TESTIMONY

### A. Applicable Law

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The ALJ cannot disregard such testimony without providing reasons that are germane to each witness. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 10-1432, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony

---

[5] The ALJ's analysis of these opinions also suffers from the lack of a specific citation supporting the ALJ's analysis. (*See* Tr. 28, relying on Plaintiff's "physical examinations (CITE)").

is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

### B. Analysis

Wizner filled out a third-party adult function report on March 17, 2014. (Tr. 231-38.) In her report, Wizner stated that Plaintiff suffers from "bad pain" and numbness, which impairs her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks. (Tr. 232-33, 236.) Wizner further stated that Plaintiff can only walk for short distances and sit and stand for short periods of time. (Tr. 236.) Wizner estimated that Plaintiff can only walk fifty yards before needing to rest for five to ten minutes. (Tr. 236.) Wizner also reported that Plaintiff's pain impairs her ability to care for herself and complete normal household chores. (Tr. 232-33.)

The ALJ assigned "little weight" to Wizner's function report. (Tr. 28.) The ALJ explained that he discounted Wizner's testimony because it was "similar" to Plaintiff's testimony. (Tr. 28.) The ALJ therefore discounted Wizner's testimony "for the same reasons" he discounted Plaintiff's testimony, citing "her longitudinal treatment history, the objective findings, her performance on physical and mental status examinations, and her independent daily activities[.]" (Tr. 28.)

Plaintiff argues that the ALJ erred in discounting Wizner's testimony based on the ALJ's "perception" that Wizner's testimony was "similar" to Plaintiff's testimony. (Pl.'s Opening Br. at 9.) In Plaintiff's view, "[t]he ALJ's reasoning is tautology and, as such, a logical fallacy." (Pl.'s Opening Br. at 9.) Plaintiff maintains that "[r]ejecting corroborating evidence because it is similar to and bolsters [other record] evidence is an exercise in circular logic that renders the definition of corroboration meaningless," and that "allowing an ALJ to reject opinions from third

PAGE 13 – OPINION AND ORDER

parties because they are similar to [and] consistent with other evidence in the record . . . would place claimants in an untenable position while permitting the adjudicator to have his cake and eat it also." (Pl.'s Opening Br. at 9-10.) Additionally, Plaintiff argues that the ALJ's rejection of Wizner's testimony "flies in the face of [the] Ninth Circuit's explicit requirements for an ALJ to provide specific and germane reasons when rejecting [lay] witness statements." (Pl.'s Opening Br. at 10.)

The Court finds Plaintiff's arguments unpersuasive. As an initial matter, it was reasonable for the ALJ to find that Plaintiff's testimony is similar to Wizner's testimony. Like Wizner, Plaintiff testified that she suffers from "severe pain," which impairs her ability to, among other things, lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks. (Tr. 244.) Similar to Wizner, Plaintiff also testified that she cannot sit or stand for "any quality length of time" or "walk very long." (Tr. 239, 244.) Also like Wizner, Plaintiff estimated that she can only walk a block before needing to rest for five to ten minutes and testified that her "shooting pain" impairs her ability to care for herself and complete household chores. (Tr. 240-42, 244.)

In addition, and most notably, Plaintiff does not dispute that the ALJ provided clear and convincing reasons for discounting her symptom testimony. (*See* Pl.'s Reply Br. at 8, stating that Plaintiff "did not raise a challenge to the ALJ's credibility determination on appeal"). That is significant because, contrary to Plaintiff's arguments, the Ninth Circuit has held that "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams*, 493 F. App'x at 869 (quoting *Valentine*, 574 F.3d at 694). Thus, the Court concludes that the ALJ did

not err in discounting Wizner's lay testimony because the ALJ provided germane reasons for doing so. *See Johnson v. Colvin*, No. 14-cv-01589, 2015 WL 4698435, at *7 (C.D. Cal. Aug. 6, 2015) ("Plaintiff did not challenge the ALJ's adverse credibility determination and cannot now rely on lay witness testimony of the same complaints rejected by the ALJ to resurrect the credibility of those complaints."); *Shannon v. Astrue*, No. 10-cv-00359, 2011 WL 3420846, at *4 (C.D. Cal. Aug. 4, 2011) ("Shannon does not challenge the ALJ's credibility finding as to his own testimony. Given that the ALJ found that Ms. Walker's statements were similar, it follows the ALJ also gave germane reasons for rejecting her testimony." (citing *Valentine*, 574 F.3d at 694)), *aff'd*, 540 F. App'x 635 (9th Cir. 2013).

## III. REMEDY

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). "Before [a court] may remand a case to the ALJ with instructions to award benefits, three requirements must be met." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Those requirements are "'(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id.* (citation omitted).

Plaintiff asks the Court to remand for an award of benefits but fails to address the requirements discussed above or explain why an immediate award of benefits is proper. The Court finds that further proceedings would serve a useful purpose here, because (1) the ALJ issued an incomplete decision, and (2) the ALJ must properly assess the weight to accord to

PAGE 15 – OPINION AND ORDER

Dr. Sahota's opinion and, if necessary, reassess Plaintiff's RFC. *See Amloian*, 2016 WL 7223260, at *7 ("[R]emand is appropriate for the ALJ to fully and properly assess the weight to be accorded to [the orthopedic surgeon] and, if necessary, reassess Plaintiff's RFC and determine whether he can perform any jobs existing in significant numbers in the national economy.").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

**IT IS SO ORDERED.**

DATED this 31st day of October, 2019.

_____
STACIE F. BECKERMAN
United States Magistrate Judge